UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON, | CASE NO. 21-5509 RJB |
| Plaintiff, | ORDER ON MOTION FOR DEFAULT JUDGMENT |
| v. | |
| J.M.S. ASSOCIATE MARKETING, LLC, JOSETTE M. SELBERT, TELE TRANSFORM, VIVID HEAR and JOHN DOE 1-10, | |
| Defendants. | |

The matter comes before the Court on the Plaintiff's Motion for Default Judgment.  Dkt. 16.  The Court has considered the pleadings filed regarding the motion and the remaining file.

On July 15, 2021, the Plaintiff, acting *pro se*, filed this case asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq*. ("TCPA") and state law for the Defendants' alleged six solicitations of the Plaintiff, by telephone, without his consent while his phone number was registered on the national Do-Not-Call Registry.  Dkt. 1.

After they were served and failed to appear in the case or otherwise respond, on August 16, 2021, the Plaintiff moved for an entry of default against Defendants J.M.S. Associate Marketing, LLC ("J.M.S.") and Josette M. Selbert.  Dkt. 12.  The Clerk of the Court entered

ORDER ON MOTION FOR DEFAULT JUDGMENT - 1

default on August 18, 2021 against these parties.  Dkt. 14.  This motion for default judgment (Dkt. 16) followed.

## I.     FACTS

According to the Complaint, on July 9, 2020, the Plaintiff purchased cellular phone, and registered and paid for a telephone number with a Washington State area code  - (360).  Dkt. 1, at 3.  The number was registered on the national Do-Not-Call registry more than 31 days before April 19, 2021.  *Id.*  All calls that are the subject of the Complaint were made to the cell phone with this 360-area code number.  *Id.*

**Call #1.** The Plaintiff asserts that on April 19, 2021, he received an automated phone call with an artificial or recorded voice saying they were from "Tele Transform," and encouraging the purchase of a body massage chair.  Dkt. 1, at 6.

**Call #2.** On May 27, 2021, the Plaintiff alleges that he missed a call and returned that call shortly thereafter.  Dkt. 1, at 6.  He alleges that a voice answered with, "[t]hank you for calling Tele Transform.  This is Leo on a recorded line."  *Id.*  The Plaintiff "believes that the Defendants dialed his . . . number . . . for the purpose of encouraging the purchase of goods or services."  *Id.*

**Call #3.** On May 28, 2021, the Plaintiff asserts that he received an automated phone call with an artificial or recorded voice saying they were from "Tele Transform," and encouraging the purchase of a body massage chair.  Dkt. 1, at 6.  The Plaintiff states that he asked to be put on their do-not-call list and the voice said, "'un-huh, that's o.k.'" and hung up.  *Id.*

**Call #4.** On June 1, 2021, the Plaintiff alleges he received an automated phone call with an artificial or recorded voice saying, "'Hi this is Leo, I'm a hearing administrator calling on a recorded line, how are you doing today?"  Dkt. 1, at 6.  The Plaintiff alleges that he "responded

ORDER ON MOTION FOR DEFAULT JUDGMENT - 2

with 'uh good, what is a hearing administrator?' After a long pause, the Defendants hung up." *Id.*

      **Call #5.** On June 4, 2021, the Plaintiff alleges he received an automated phone call with an artificial or recorded voice saying, "'Hi this is Leo, I'm a hearing administrator calling on a recorded line, how are you doing today?" Dkt. 1, at 7. The Plaintiff alleges that "later in the call, the man's voice said, 'now I'm with Tele Transform'" and then his message went on to encourage the purchase of hearing aids. *Id.* He maintains that the call transitioned to a live female agent who identified herself as a "hearing specialist with Vivid Hear." *Id.* The Plaintiff alleges that she directed the Plaintiff to the website vividhear.com and encouraged Plaintiff to purchase hearing aids. *Id.*

      **Call #6**. Around June 9, 2021, the Plaintiff missed a call and called that number back. The voice that answered is alleged to have said, "Thank you for calling Tele Transform. This is Ashley on a recorded line." Dkt. 1, at 7. The Plaintiff maintains that the call was then transferred to a live agent who identified herself as a "hearing specialist with Vivid Hear." *Id.* The Plaintiff "believes that the Defendants dialed his . . . number . . . for the purpose of encouraging the purchase of goods or services." *Id.*

      Defendant J.M.S. is alleged to be a Florida company that operates as a call center to sell products over the phone, including massage chairs and hearing aids under fictitious business names, "Tele Transform," for the massage chairs, and "Vivid Hear," for the hearing aids. *Id.,* at 3-4. The Complaint alleges that these "fictitious business names," "Tele Health" and "Vivid Hear," "do not appear to be registered as legal entities in the State of Florida." *Id.*, at 4. The Complaint asserts that J.M.S. has the same physical address of Vivid Hear and that a publicly

available resume lists working for "JMS Marketing LLC in Melbourne Florida" as "[r]eceiving outbound and inbound calls for Vivid Hear for sale of hearing aids . . ." *Id.*  As stated above, the Complaint alleges that the Plaintiff "has received two telemarketing phone calls where the re-recorded or artificially generated portion of the call says the entity behind the call is 'Tele Transform' but later the live agent on the same call identifies the entity behind the call as "Vivid Hear." *Id.,* at 5.

Defendant Josette M. Selbert is alleged to be "the person responsible for illegally telemarketing the massage chairs and hearing aids." Dkt. 1, at 4.  The Complaint maintains that "[t]he 'JMS' of J.M.S. Associate Marketing, LLC would appear to stand for the general manager, registered agent and presumed owner of J.M.S., Josette M. Selbert." *Id.*  It alleges that Selbert describes her job position at J.M.S. as "recruit[ing], interview[ing], and train[ing] sales staff for an outbound call center.  Manag[ing] the daily operations of a telephone sales room." *Id.*

The Complaint alleges that "J.M.S. employees and company resources are being used to telemarket products under the fictitious company names of Tele Transform and Vivid Hear / vivdhear.com under the guidance and direction of Selbert." *Id.,* at 5.  It maintains that the Plaintiff does not, and never has had, a business relationship with any Defendant and the Defendants do not have "an invitation or consent to telephone solicit Plaintiff." *Id.*

The Plaintiff makes claims for violations of the federal TCPA, Washington's Commercial Telephone Solicitation Act, RCW 19.158, *et. seq.* ("CTSA"), and under Washington's Automatic Dialing and Announcing Device Act, RCW 80.36, *et. seq.* ("ADADA"). Dkt. 1.  The Plaintiff seeks damages and treble damages under 47 U.S.C. § 277(b)(3), costs, and injunctive relief that

ORDER ON MOTION FOR DEFAULT JUDGMENT - 4

1  the Court "enjoin the Defendants from further violations of State and Federal telemarketing

2  laws." *Id.*

3                              II.    **DISCUSSION**

4          The Plaintiff moves this Court for an entry of default judgment on his federal and state

5  claims against both J.M.S. and Selbert, who are both alleged to be Florida residents, and who

6  "failed to plead or otherwise defend."

7          Before entering a judgment, a "court should determine whether it has the power, *i.e.,* the

8  jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir.

9  1999).  "When entry of judgment is sought against a party who has failed to plead or otherwise

10  defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

11  matter and the parties." *Id.*

12          Accordingly, this opinion will first turn to whether it has subject matter jurisdiction over

13  the case, then to whether it has personal jurisdiction over the parties, and if it has both, will

14  address the motion for default judgment.

15          **A.  Subject Matter Jurisdiction**

16          The Court has subject matter jurisdiction over the federal TCPA claim because it presents

17  a federal question under 28 U.S.C. § 1331.  It has supplemental subject matter jurisdiction over

18  the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are related to the

19  federal claim "that they form part of the same case or controversy."  The Court has subject

20  matter jurisdiction over the case.

21          **B.  Personal Jurisdiction and Service of Process**

22

23

24  ORDER ON MOTION FOR DEFAULT JUDGMENT - 5

1          Where, as here, no applicable federal statute addresses the issue, a court's personal

2   jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits.

3   *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.

4   2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest

5   reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management*

6   *Corp.,* 95 Wn. App. 462, 465 (1999). Because Washington's long-arm jurisdictional statute is

7   coextensive with federal due process requirements, the jurisdictional analysis under state law and

8   federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–

9   01 (9th Cir.2004).

10         To exercise personal jurisdiction over a nonresident defendant under federal law, that

11  defendant must have at least "minimum contacts" with the relevant forum state such that

12  exercising jurisdiction "does not offend traditional notions of fair play and substantial justice."

13  *Schwarzenegger*, 374 F.3d at 801, (*citing International Shoe v. Washington*, 326 U.S. 310, 316

14  (1945)). In determining whether a defendant had minimum contacts, courts focus on the

15  relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186

16  (1977). Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,*

17  303 F.3d 1104, 1111 (9th Cir. 2002).

18         **General Personal Jurisdiction**. "A court may assert general jurisdiction over foreign

19  (sister-state or foreign-country) corporations to hear any and all claims against them when their

20  affiliations with the State are so 'continuous and systematic' as to render them essentially at

21  home in the forum State."  *Goodyear Dunlop Tire Operations, S.A. v. Brown,* 564 U.S. 15, 919

22  (2011).

23

24  ORDER ON MOTION FOR DEFAULT JUDGMENT - 6

1    The Plaintiff has failed to show that the Court has general personal jurisdiction over

2 either J.M.S. or Selbert.  The allegations in the Complaint are that J.M.S. and Selbert are Florida

3 residents.  The allegations to not demonstrate that their "affiliations" with Washington are so

4 "continuous and systematic as to render [J.M.S. and/or Selbert] essentially at home" in

5 Washington.

6    **Specific Personal Jurisdiction**.  In order for a court to exercise specific jurisdiction over

7 a foreign defendant or foreign defendant corporation, the following is required: (a) the defendant

8 purposefully directed its activities toward Washington or availed itself of the privilege of

9 conducting activities in Washington, thereby invoking the benefits and protections of its laws;

10 (b) the plaintiff's claims arise out of defendant's Washington-related activities; and (c) the

11 exercise of jurisdiction would be reasonable.  *AMA Multimedia, LLC v. Wanat*, 2020 WL

12 4745032, at *4 (9th Cir. Aug. 17, 2020)(*citing In re Boon Glob. Ltd*., 923 F.3d 643, 650 (9th Cir.

13 2019) (*internal quotation marks omitted*); *Easter v. American West Financial,* 381 F.3d 948,

14 960–61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th

15 Cir. 2000).  Plaintiff has the burden to make the prima facie showing of jurisdiction. *Ziegler*, 64

16 F.3d 470, 473 (9th Cir.1995).

17    The Plaintiff has made sufficient allegations in the Complaint to show that the Court has

18 specific personal jurisdiction over J.M.S. The Plaintiff alleges that it was J.M.S., through its

19 automated devices, that called him in violation of the TCPA and state law.  He alleges that

20 J.M.S. called his cell phone number, which has a Washington area code, to attempt to sell him

21 hearing aids or massage chairs while he was in Washington using robocall devices.  Accordingly,

22 he alleged enough to show that J.M.S. "purposely directed its activities toward Washington"

23

24 ORDER ON MOTION FOR DEFAULT JUDGMENT - 7

1 and/or "purposely availed itself of the privilege of conducting business in Washington."  The

2 claims he asserts, violation of the TCPA and Washington laws related to cell phone solicitation

3 calls "arise out of" J.M.S.'s Washington-related activities.  Additionally, the exercise of

4 jurisdiction is reasonable.  J.M.S. was served with a copy of the summons and complaint on July

5 20, 2021 at the address and on the agent of service listed with the Florida Department of State,

6 Division of Corporations, by a person who is unrelated to the Plaintiff.  Dkt. 16, at 16 and 18-19.

7 It appears that service was proper under Fed. R. Civ. P. 4.  The Court has specific personal

8 jurisdiction over J.M.S. for the claims asserted in this case.

9      The Plaintiff has not shown that this Court has specific personal jurisdiction over

10 Defendant Josette M. Selbert.  He asserts that she is a manager at J.M.S. and maybe the owner of

11 this Florida limited liability company.  (To this motion, he attaches a document that purports to

12 be her resume and lists "Human Resource Manager/Recruiter/Training Manager at J.M.S.

13 Associate Marketing, LLC" as her current employment.  Dkt. 16, at 22). The Plaintiff alleges in

14 his Complaint that the calls are made under her "guidance and direction."  The Plaintiff's

15 allegations are not sufficient to demonstrate that Selbert has "purposely directed" her activities

16 toward Washington or "purposely availed [herself] of the privilege of conducting business in

17 Washington."  He does not allege that she was directly involved in the conduct which arguably

18 violates the statutes at issue.  The Plaintiff appears to be attempting to merge J.M.S.'s conduct,

19 as a corporate entity, with Selbert's conduct, as a human resources manager or maybe owner.  He

20 fails to offer any grounds for disregarding the corporate entity.  He makes no showing that his

21 claims arise from her conduct.  It would not be reasonable for this Court to exercise personal

24 ORDER ON MOTION FOR DEFAULT JUDGMENT - 8

jurisdiction over Selbert.  Because this Court does not have personal jurisdiction over Selbert, the Plaintiff's claims asserted against her should be dismissed without prejudice.

### C. Default Judgment

Fed. R. Civ. P. 55(b), "Entering Default Judgment," provides,

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk— on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:

> > (A) conduct an accounting;

> > (B) determine the amount of damages;

> > (C) establish the truth of any allegation by evidence; or

> > (D) investigate any other matter.

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of  excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).

### 1.  *Eitel* Factors

The *Eitel* factors favor an entry of default judgment against J.M.S. in this case.

ORDER ON MOTION FOR DEFAULT JUDGMENT - 9

1          **Prejudice to Plaintiff**. The possibility of prejudice to the Plaintiff here if the Court fails

2  to enter default is somewhat high.  He will be without a remedy for the alleged violations.

3          **Merits and Sufficiency of Complaint**. Further, the Plaintiff's substantive claims have

4  merit and the Complaint sufficiently alleges the basic elements of the claims.

5          It is a violation of the TCPA to "make any call (other than a call made for emergency

6  purposes or made with the prior express consent of the called party) using any automatic

7  telephone dialing system or an artificial or prerecorded voice . . . to any telephone number

8  assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA prohibits

9  "almost all robocalls to cell phones."  *Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct.

10  2335, 2344 (2020)(invalidating and severing government debt-collection exception and

11  upholding remainder of the robocall provision of TCPA).  Further, the TCPA regulations

12  prohibit calls to numbers on the national Do-Not-Call registry.  47 C.F.R. § 64.1200(c)(2) and

13  (e).

14          Similarly, Washington's WADAD prohibits the use of an automatic dialing and

15  announcing device "for purposes of commercial solicitation."  RCW § 80.36.400(2).

16  Washington's CTSA, which regulates commercial telephone solicitors or salespersons, requires

17  that solicitors identify themselves in the first minute of the call, terminate the call within ten

18  seconds if the purchaser indicates they did not wish to continue the conversation, not make any

19  additional commercial telephone solicitation of the called party for one year if the party indicates

20  that they do not wish to be called again, and register with the Washington State Department of

21  Licensing as a Commercial Telephone Solicitor.  RCW 19.158.11(1), (2) and RCW 19.158.150.

22  Both the CTSA and WADAD define "commercial solicitation" as an "unsolicited telephone call"

23

24  ORDER ON MOTION FOR DEFAULT JUDGMENT - 10

1   initiated by a salesperson "for the purpose of encouraging a person to purchase property, goods,

2   or services." RCW § 19.158.020(2) and §80.36.400(1)(b).

3        The text of the WADAD "is substantially similar to its federal counterpart [ the TCPA],

4   as its purpose" and so the TCPA and WADAD claims will be considered together.  *Chesbro v.*

5   *Best Buy Stores, L.P.*, 705 F.3d 913, 919 (9th Cir. 2012).  The Plaintiff alleges that he received

6   four calls from J.M.S. using an automatic telephone dialing system with an artificial or

7   prerecorded voice to his cell phone number (calls #1, #3, #4, and #5).  He asserts that the

8   purposes of each call was to get him to purchase either a massage chair or hearing aid, a "good."

9   The Plaintiff alleges that the phone number was registered on the national Do-Not-Call registry

10  and that he did not consent to any of the phone calls.  The evidence is sufficient that each of the

11  four calls he received (calls #1, #3, #4, and #5) violated the TCPA and the WADAD.  Calls #2

12  and #6, where Plaintiff called the unknown number back and the number was answered by an

13  automated or prerecorded voice, do not provide grounds for violation of the TCPA, the WADAD

14  or the CTSA.  The statutes provide that it is a violation "to make a call" not "to answer" with an

15  automated voice.  Further, there is no evidence from which to conclude that the initial calls were

16  made with an "automatic telephone dialing system."  He is not entitled to recover for calls #2 and

17  #6.

18       Likewise, to the extent that the Plaintiff's bases his claims under Washington's CTSA on

19  calls #1, #3, #4, and #5, he has sufficiently alleged that J.M.S. has violated that statute.  He

20  maintains that it has not registered with the Washington State Department of Licensing as a

21  Commercial Telephone Solicitor.  Further, he maintains that on these calls J.M.S. solicitors on

22  did not identify themselves in the first minute of the call.  He asserts that in call #3, he told

23

24  ORDER ON MOTION FOR DEFAULT JUDGMENT - 11

J.M.S. not to call him back.  He maintains that a few days later they made call #4 and #5 violating CTSA's prohibition that they do not call him a gain for a year.  As was the case with his other claims, he is not entitled to recover for calls #2 and #6 because he called J.M.S. back.

The Plaintiff's substantive claims have merit and the Complaint sufficiently alleges the basic elements of the claims favoring the entry of default judgment.

**Sum of Money**. The sum of money favors entry of default judgment.  It is statutorily set and relatively easy to ascertain.

**Possibility of a Dispute Concerning Facts and Whether Default was Excusable Neglect**.  There is no evidence that there will be a dispute concerning the material facts.  J.M.S. was personally served and there are no grounds to conclude that its default was the product of excusable neglect.

**Public Policy and Conclusion**. While there is a public policy favoring a decision on the merits, considering the record in this case, default judgment should be entered.

2.   Remedies

Once a party's default has been entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977).

**Damages.** The Plaintiff moves for a default judgment in the amount of $87,000 for the four phone calls he alleges he received from an artificial or prerecorded voice to his cell phone number (calls #1, #3, #4, and #5) and for the two calls he returned in which an artificial or prerecorded voice answered (calls #2 and #6).  As above, he is not entitled to recover for calls #2 and #4.

ORDER ON MOTION FOR DEFAULT JUDGMENT - 12

The TCPA permits "[a] person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring "an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5)(B). The court has the discretion to award up to three times the amount available under 47 U.S.C. § 227(c)(5)(B) if it finds that "the defendant willfully or knowingly violated the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

The Plaintiff's allegations support entry of default judgment for four violations of the TCPA for calls #1, #3, #4, and #5.  Accordingly, the Plaintiff is entitled to $2,000 for these violations.  While the Plaintiff argues that each call violated multiple provisions of the TCPA and its regulations, "a telephone call that violates more than one provision of the [TCPA] is considered to be a single violation rather than multiple violations." *See Heidorn v. BDD Mktg. & Mgmt. Co*., LLC, 2013 WL 6571629, at *10 (N.D. Cal. Aug. 19, 2013).  The Plaintiff has alleged sufficient facts to find that J.M.S. "willfully or knowingly" violated TCPA regulations. The Plaintiff alleged that his phone number was registered on the national Do-Not-Call registry for a least a month before the J.M.S. started the robocalls.  Moreover, the Plaintiff indicates that at the third call, he asked to be placed on J.M.S.'s do-not-call list.  Accordingly, for calls #1, #3, #4 and #5, he is entitled to treble damages on those calls.  Accordingly, he is entitled to $6000.00 for the TCPA violations.

Under the WADAD,

A person aggrieved by repeated violations of this section may bring a civil action in superior court to enjoin future violations, to recover damages, or both. The court shall award damages of at least one hundred dollars for each individual violation of this section. If the aggrieved person prevails in a civil action under

ORDER ON MOTION FOR DEFAULT JUDGMENT - 13

1    this subsection, the court shall award the aggrieved person reasonable attorneys'
     fees and cost of the suit.

2    RCW § 80.36.390(6).  Further, the WADAD provides that "a violation of this chapter is a

3    violation of the [Washington Consumer Protection Act, RCW 19.86, *et. seq*. ("CPA")] It shall be

4    presumed that damages to the recipient of commercial solicitations made using an automatic

5    dialing and announcing device are $500.00."  RCW § 80.36.400(3).  The Plaintiff has shown that

6    he is entitled to a recovery of $2,000.00 for each of the four calls made in violation of the

7    WADAD: calls #1, #3, #4, and #5. Further, the Plaintiff has shown that he is entitled to treble

8    damages under the CPA.

9        Under the CPA, to recover a plaintiff must show (1) an unfair or deceptive act or practice,

10   (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's

11   business or property, and (5) causation. *Panag v. Farmer's Ins. Co. of Wash*., 166 Wash.2d 27,

12   37 (2009).

13       The Plaintiff has alleged sufficient facts to support treble damages under the CPA.  A

14   claim may be per se unfair or deceptive, as here, where a defendant "violates a statute declaring

15   the conduct to be an unfair or deceptive act[.]" *Rush v. Blackburn*, 190 Wash.App. 945, 961-62

16   (2015).  The calls made to him were for a commercial purpose and so "occur[ed] in trade or

17   commerce" and affect the public interest.  Further, the WADAD "presumes" that the Plaintiff's

18   damages are $500.00, establishing "injury to business or property." Further, the Plaintiff has

19   asserted that J.M.S. caused his damage.  Accordingly, for calls #1, #3, #4, and #5, he is entitled

20   to treble damages for the WADAD/CPA violations in the amount of $6,000.00.

21

22

23

24   ORDER ON MOTION FOR DEFAULT JUDGMENT - 14

1    While Plaintiff attempts to claim $1,000 for each WADAD violation, citing RCW §

2    80.36.390(4), that provision applies to "fines" to be assessed as "punish[ment]" for a violation.

3    He makes no showing that he is entitled to utilize this provision for damages.

4    A violation of Washington's CTSA is automatically a violation of the Washington

5    Consumer Protection Act ("CPA"), 19.86, *et. seq.* RCW § 19.158.030. The CTSA further

6    provides, that "[i]n addition to any other penalties or remedies under chapter 19.86 RCW, a

7    person who is injured by a violation of this chapter may bring an action for recovery of actual

8    damages, including court costs and attorneys' fees." RCWA § 19.158.130.

9    As stated above, the Plaintiff has alleged sufficient facts to support the first three

10   elements of a CPA claim. The Plaintiff has not, however, alleged facts to support an assertion of

11   "injury to [his] business or property." While the Plaintiff appears to claim thousands of dollars

12   in damages for violation of the CTSA, he does not cite to any statutory support for those claims.

13   Treble damages under the CPA "are based upon 'actual' damages award." *Mason v. Mortgage*

14   *America, Inc.,* 114 Wash.2d 842, 855 (1990). The Plaintiff has not provided sufficient support

15   for his claim for damages under Washington's CTSA.

16   **Injunctive Relief**. Injunctive relief is permitted under the TCPA. 47 U.S.C.

17   §227(c)(5)(A). The Plaintiff "asks this Court to enjoin the Defendants from further violations of

18   State and Federal telemarketing laws."

19   The Plaintiff is not entitled to an entry of default judgment regarding his injunctive relief.

20   He seeks extraordinarily broad relief and fails to show that it is appropriate here.

21

22

23

24   ORDER ON MOTION FOR DEFAULT JUDGMENT - 15

**Costs**.  The Plaintiff makes a claim for costs in his Complaint.  He does not include such claim in his motion here.  To the extent he seeks an entry of judgment against J.M.S. for costs, he should comply with Fed. R. Civ. P. 54(d) and Local Rule W.D. Wash. 54.

### III.    ORDER

It is **ORDERED** that:

- The Plaintiff's Motion for Default Judgment (Dkt. 16) **IS**
    - **GRANTED**, as follows:
        - Default Judgment **IS ENTERED** against J.M.S. Associate Marketing, LLC in the amount of $6,000 for the TCPA violations and of $6,000 for the WADAD violations for a total of $12,000; and
    - **DENIED, IN ALL OTHER RESPECTS**;
- The claims asserted against Josette M. Selbert **ARE DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of September, 2021.

ROBERT J. BRYAN
United States District Judge